UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

04- 80664

Civil Action No. _____

SECURITIES AND EXCHANGE COMMISSION,

 Plaintiff,

v.

MICHAEL MORRELL,
JOHN HAINES, and
PAUL BORNSTEIN,

 Defendants.

COMPLAINT FOR
INJUNCTIVE AND
OTHER RELIEF



Plaintiff Securities and Exchange Commission ("Commission") alleges that:

## I. INTRODUCTION

1. The Commission brings this action to enjoin Defendants Michael Morrell, John Haines, and Paul Bornstein from violating the federal securities laws. The case involves the dissemination of materially false and misleading information about CyberCare, Inc. ("CyberCare" or the "Company") through press releases, road shows, an annual report, and a purportedly objective research report in violation of the antifraud and antitouting provisions of the federal securities laws.

2. From at least December 1999 to May 2000, CyberCare, through Morrell, its chief executive officer ("CEO"), and Haines, one of its senior vice-presidents and the president of its technology division, issued press releases and made presentations to the public that contained false and misleading statements concerning orders for CyberCare's products. In addition, Morrell and

Haines reviewed and signed a Form 10-KSB that CyberCare filed with the Commission in April 2000 that they knew contained materially false and misleading information.

3. During this same period, Bornstein, who was both a research analyst at Connecticut Capital Markets ("Connecticut Capital"), a registered broker-dealer, and an employee at a public relations firm that CyberCare had hired, created a purportedly objective research report on the CyberCare that rated the Company as a "strong buy." The research report, published in February 2000 ("Research Report"), failed to disclose Bornstein's obvious conflict of interest: i.e., that he was being paid by CyberCare do to its public relations while disseminating supposedly "objective" research reports on CyberCare. The Research Report also contained materially false and misleading information concerning orders for CyberCare's products.

4. Bornstein's research report also failed to disclose fully Bornstein's compensation for public relations services he was providing to CyberCare.

5. CyberCare's stock price rose from under $5 per share to almost $40 by late February 2000 following issuance of the press releases and the research report that contained false information and omitted material information.

## II.   DEFENDANTS

6. Defendant Morrell, 61, resides in Lantana, Florida. Morrell was chairman of the board and CEO of CyberCare from August 1996 to February 2002.

7. Defendant Haines, 57, resides in Lantana, Florida. Haines was CyberCare's senior vice president and the president of its technology division from September 1999 to June 2001.

8. Defendant Bornstein, age 47, resides in West Hartford, Connecticut. Bornstein was a registered representative of Connecticut Capital from May 1999 to November 2000. From

September 1999 to April 2000, Bornstein also worked for the public relations firm hired by CyberCare.

### III.  JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa.

10. This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida. In addition, Morrell and Haines reside in the Southern District of Florida, where CyberCare's headquarters was located during the relevant time period.

11. Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

### IV.  THE DEFENDANTS DISSEMINATED MATERIALLY FALSE AND MISLEADING INFORMATION CONCERNING CYBERCARE

#### A. False Press Releases and Public Filing

12. From at least December 1999 through May 2000, CyberCare, through Morrell and Haines, issued a series of false and misleading press releases that announced orders or agreements for the sale of the Company's Electronic HouseCall System ("EHC") that were non-existent or grossly exaggerated. The press releases also made baseless projections with regard to

3

future orders. In addition, two press releases announced multi-million dollar transactions with entities that lacked the financial wherewithal to consummate the deals. Due to their positions with Cypercare, Morrel and Haines controlled the content of CyperCare's press releases.

13.     For example, on December 10, 1999, CyberCare issued a press release that announced it had entered into an agreement with the Florida Agency for Health Care Administration ("FHCA"). The press released stated that FHCA had agreed to a "two-stage" program to serve patients with CyberCare's EHC, a device that allowed health care providers to monitor patients from a remote location via the Internet. The December 10, 1999 press release claimed that FHCA would lease 25 EHC units during the first stage of the program, followed by the purchase of an additional 3,000 units during the second stage.

14.     In reality, Morrell and Haines knew, or were reckless in not knowing, that the FHCA had not agreed to any such program. Rather, CyberCare had merely sent an unsolicited proposal to the FHCA.

15.     On January 6, 2000, CyberCare issued another materially false and misleading press release that announced that Health-Link Group, LLC ("HealthLink") expected to help CyberCare sell 100 EHC units during 2000, and between 3,000 and 6,000 by year-end 2003. This press release was false. Although CyberCare and HealthLink had entered into a joint marketing agreement, HealthLink's projected sales of EHC units were only a small fraction of what CyberCare's January 6, 2000 press release announced. Defendants Morrell and Haines knew, or were reckless in not knowing, that the projected sales numbers included in the January 6, 2000 press release were materially false and misleading.

16.     In yet another materially false and misleading press release, issued on March 21, 2000, CyberCare announced that Metropolitan Health Networks ("MetCare") had ordered 12,500

EHC units – an amount greater than the combined total of all previous orders announced by CyberCare – that would amount to $60 million in revenues for CyberCare; however, the March 21, 2000 press release failed to disclose MetCare's precarious financial situation. MetCare had been delisted from the NASDAQ SmallCap Market for failing to meet the minimum net worth requirement only weeks before the purported multimillion-dollar transaction with CyberCare. CyberCare's press release also failed to disclose that MetCare's auditors had issued a "going concern" opinion. In addition, the press release failed to disclose that MetCare had defaulted on its financial obligations to numerous third parties.

17. Moreover, at the time CyberCare announced the $60 million dollar order, public records reflected that MetCare's financial condition was so poor that it had not been able to file quarterly reports for the previous three quarters of 1999 or its annual report for 1999. In addition, in its last public filing prior to the end of its 1999 fiscal year end, MetCare said it had only $53,105 in cash. Morrell and Haines knew, or were reckless in not knowing, that Metcare's true financial condition showed it could not complete a $60 million transaction and that CyberCare's March 21, 2000 press release omitted this material information. Not surprisingly, the MetCare transaction was never consummated.

18. Morrell, as CyberCare's CEO, and Haines, as CyberCare's senior vice president and president of its technology division, were responsible for CyberCare's press releases regarding its EHC product. During the relevant time period, Morrell and Haines were both part of an executive committee that reviewed, discussed, and ultimately determined the form and content of CyberCare's press releases. Therefore, Morrell and Haines knew, or were reckless in not knowing, that a number of CyberCare's press releases were false and misleading.

19. On April 4, 2000, Morrell and Haines caused CyperCare to file a Form 10-KSB for its fiscal year ending December 31, 1999. Like many of CyberCare's press releases, the Form 10-KSB contained false and misleading information concerning orders for CyberCare's EHC product. CyberCare's Form 10-KSB, which Morrell and Haines reviewed and signed, represented that the Company had received "orders and commitments" for over 36,000 EHC units over the next three years – translating to over $180 million in sales revenue. CyberCare's representation was completely baseless, as the Company did not have orders and commitments that even remotely approached 36,000 EHC units.

### B. Presentations at Road Shows by Morrell and Haines

20. During the spring of 2000, Morrell and Haines made materially misleading presentations concerning CyberCare to financial professionals at sales conferences, brokerage houses, and investment banks in cities, including Orlando, Memphis and New York (the "Road Shows"). During the Road Shows, Morrell and Haines discussed various aspects of CyberCare's business and technology with the assistance of power point presentations that Haines created. The road shows were intended to stimulate investment interest in CyberCare among institutional investors, research analysts, and retail brokers.

21. In March 2000, for example, at an investment banking conference in Orlando, a power point slide highlighted "recent orders" for CyberCare's EHC unit, and touted the same non-existent "orders" for the EHC units that Haines and Morrell had misrepresented in CyberCare's press releases. The power point slides also included several hundred orders not included in the misleading press releases, but that were also non-existent. Specifically, the power point slides announced an order for 420 EHC units from Amelia Park, a retirement community near Jacksonville, Florida. In reality, Amelia Park never ordered a single CyberCare

unit. Morrell and Haines knew, or were reckless in not knowing, that the power point slides were false and misleading.

### C. Bornstein's False and Misleading Research Report that Failed to Disclose Fully his Conflict of Interest and Compensation

22. Bornstein, a registered representative at Connecticut Capital, created the Research Report on CyberCare that failed to disclose material information, and contained false and misleading information.

23. Bornstein's research report, which described him as Connecticut Capital's "Managing Director, Research," placed a "Strong Buy" recommendation on CyberCare's stock. The research report also placed a 12-month price target of $52 per share on CyberCare's stock (which was quoted on the NASDAQ at $11 per share at the time) and stated that CyberCare's shares "have significant upside potential."

24. Bornstein's research report failed to disclose, however, that at least part of his optimism about CyberCare resulted from his simultaneous employment by CyberCare's public relation's firm. CyberCare had hired the public relations firm in October 1999 to help CyberCare create press releases and with investor presentations. CyberCare paid the public relations firm a monthly fee of $4,000, plus 24,000 shares of CyberCare stock, for providing it with public relations services. The public relations firm, in turn, paid Bornstein a monthly salary of approximately $7,500 to provide public relations services to CyberCare and reimbursed Bornstein for all his expenses associated with providing those services.

25. From the fall of 1999 through April 2000, Bornstein maintained his office at the public relations firm, where he spent most of his time and where he maintained all of his files concerning CyberCare. Bornstein reviewed CyberCare's press releases and power point slides,

and often traveled with Morrell and Haines to the road shows, where he assisted them in making their presentations. Bornstein often answered questions on CyberCare's behalf and, in some instances, had investor inquiries directed to him at the public relations firm.

26.     Accordingly, Bornstein's research report was not solely the independent analyst's recommendation that it purported to be. Instead, Bornstein had a blatant conflict of interest that compromised his objectivity and which he failed to disclose in the research report.

27.     Bornstein's research report also included materially false and misleading information that went far beyond that announced in CyberCare's press releases. For example, the research report stated that HealthLink "ordered 100 [EHC] machines" from CyberCare when, as explained above, the press releases falsely stated that HealthLink "expected to place" 100 EHC units during calendar year 2000. Bornstein's $52 price target was based ultimately on these, and other, purported orders for the EHC.

28.     Bornstein knew that Connecticut Capital provided his research report to its clients and potential clients. He was also aware that CyberCare briefly maintained the research report on the Company website.

**D.      CyberCare's Price And Volume Movement Following The Dissemination of False and Misleading Information**

29.     As a result of the press releases, management presentations, Form 10-KSB, and research report, CyberCare's common stock rose from a price of approximately $5 in early December 1999 to a high of nearly $40 by the end of February 2000.

## COUNT I

## FRAUD IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT
(Against All Defendants)

30. The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. From at least late 1999 through the spring of 2000, Defendants Morrell, Haines, and Bornstein, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

32. By reason of the foregoing, Defendants Morrell, Haines, and Bornstein, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

## FRAUD IN VIOLATION OF
## SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT
(Against All Defendants)

33. The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

34. From at least late 1999 through the spring of 2000, Defendants Morrell, Haines, and Bornstein, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions,

9

practices and courses of business which operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

35.     By reason of the foregoing, Defendants Morrell, Haines, and Bornstein, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3)].

## COUNT III

### FRAUD IN VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER
(Against All Defendants)

36.     The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

37.     From at least late 1999 through the spring of 2000, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

38.     By reason of the foregoing, the Defendants, directly or indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## COUNT IV

## MORRELL AND HAINES ARE LIABLE AS CONTROL PERSONS FOR CYBERCARE'S VIOLATIONS OF THE ANTIFRAUD PROVISIONS
(Against Morrell and Haines)

39.     The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

40.     From at least late 1999 through the spring of 2000, CyberCare, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

41.     During the relevant time period, Defendants Morrell and Haines were, directly or indirectly, control persons of CyberCare for purposes of Section 20(a) of the Exchange Act [15 U.S.C. §78t(a)].

42.     By reason of the foregoing, Morrell and Haines, as control persons, are jointly and severally liable with and to the same extent as CyberCare for CyberCare's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## COUNT V

## MORRELL AND HAINES ARE LIABLE AS CONTROL PERSONS FOR CYBERCARE'S REPORTING VIOLATIONS
### (Against Morrell and Haines)

43.     The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

44.     Section 13(a) of the Exchange Act and Rule 13a-1, thereunder, require issuers of registered securities to file with the Commission factually accurate annual and quarterly reports. Exchange Act Rule 12b-20 provides that in addition to information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

45.     During the relevant time period, CyberCare was an issuer subject to these reporting requirements.

46.     On or about April 4, 2000, CyberCare filed its Form 10-KSB with the Commission that contained materially false information.

47.     During the relevant time period, Defendants Morrell and Haines were, directly or indirectly, control persons of CyberCare for purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

48.     By reason of the foregoing, Morrell and Haines, as control persons, are jointly and severally liable with and to the same extent as CyberCare for CyberCare's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 [17 C.F.R. §§ 240.12b-20 and 240.13a-1] thereunder.

## COUNT VI

### UNDISCLOSED COMPENSATION FOR STOCK PROMOTION IN VIOLATION OF SECTION 17(b) OF THE SECURITIES ACT
(Against Bornstein)

49.     The Commission repeats and realleges Paragraphs 1 through 29 of this Complaint as if fully set forth herein.

50.     In February 2000, Defendant Bornstein, through the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, published and circulated articles and communications that, though not purporting to offer securities for sale, described certain securities.

51.     Defendant Bornstein received consideration for such activities from, or on behalf of, the issuer of these securities and did not fully disclose the past or future receipt of such consideration and the amounts.

52.     By reason of the foregoing, Defendant Bornstein has violated, and unless enjoined, will continue to violate Section 17(b) of the Securities Act [15 U.S.C. §§ 77(q)(b)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

**I.     Declaratory Relief**

Declare, determine and find that each of the Defendants committed the violations of the federal securities laws alleged in this Complaint.

**II.    Permanent Injunctive Relief**

Issue a Permanent Injunction, restraining and enjoining each of the Defendants and all of their officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with them, and each of them, from violating the provisions of the securities laws each is alleged to have violated in this Complaint.

**III.     Disgorgement**

Issue an Order requiring Defendants Morrell and Haines to disgorge all ill-gotten profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

**IV.     Penalties**

Issue an Order directing each of the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

**V.     Officer and Director Bar**

Issue an Order, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. §78u(d)(2), barring Defendants Morrell and Haines from acting as an officer of director of an issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act, 15. U.S.C. §78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. §78o(d).

**VI.     Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**VII.     Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

July __, 2004               By:  */s/ Christopher E. Martin*
                                 Christopher E. Martin
                                 Senior Trial Counsel
                                 SD Fla. Bar. No. A5500747
                                 Direct Dial: (305) 982-6386

                                 Ivan P. Harris
                                 Assistant Regional Director
                                 Florida Bar No. 957666
                                 Direct Dial: (305) 982-6342

                                 Attorneys for Plaintiff
                                 **SECURITIES AND EXCHANGE COMMISSION**
                                 801 Brickell Avenue, Suite 1800
                                 Miami, Florida 33131
                                 Telephone: (305) 982-6300
                                 Facsimile:   (305) 536-4154

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
MICHAEL MORRELL, JOHN HAINES, and PAUL BORNSTEIN

04-80664 CIV-MARRA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** PALM BEACH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

MAGISTRATE JUDGE SELTZER

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Christopher E. Martin, Esq. (305) 982-6386
Ivan Harris, Esq. (305) 982-6342
SEC, 801 Brickell Ave., 1800, Miami, FL 33131

**ATTORNEYS (IF KNOWN)**

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, BROWARD, (PALM BEACH), MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business In This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business In Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| □ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B□ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 362 Personal Injury – Med Malpractice | B□ 620 Other Food & Drug | □ 423 Withdrawal 28 USC 157 | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | □ 365 Personal Injury – Product Liability | B□ 625 Drug Related Seizure of Property 21 USC 881 | | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 368 Asbestos Personal Injury Product Liability | B□ 630 Liquor Laws | A PROPERTY RIGHTS | B□ 450 Commerce/ICC Rates/etc |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers Liability | | B□ 640 R R & Truck | □ 820 Copyrights | □ 460 Deportation |
| B□ 151 Medicare Act | □ 340 Marine | PERSONAL PROPERTY | B□ 650 Airline Regs | □ 830 Patent | □ 470 Racketeer Influenced and Corrupt Organizations |
| B□ 152 Recovery of Defaulted Student Loans (Excl Veterans) | □ 345 Marine Product Liability | □ 370 Other Fraud | B□ 660 Occupational Safety/Health | □ 840 Trademark | □ 810 Selective Service |
| B□ 153 Recovery of Overpayment of Veteran's Benefits | □ 350 Motor Vehicle | □ 371 Truth in Lending | B□ 690 Other | | [X] 850 Securities/Commodities/Exchange |
| □ 160 Stockholders' Suits | □ 355 Motor Vehicle Product Liability | □ 380 Other Personal Property Damage | A LABOR | B SOCIAL SECURITY | □ 875 Customer Challenge 12 USC 3410 |
| □ 190 Other Contract | □ 360 Other Personal Injury | □ 385 Property Damage Product Liability | □ 710 Fair Labor Standards Act | □ 861 HIA (1395ff) | □ 891 Agricultural Acts |
| □ 195 Contract Product Liability | | | □ 720 Labor/Mgmt. Relations | □ 862 Black Lung (923) | □ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 863 DIWC/DIWW (405(g)) | □ 893 Environmental Matters |
| □ 210 Land Condemnation | □ 441 Voting | B□ 510 Motions to Vacate Sentence | □ 740 Railway Labor Act | □ 864 SSID Title XVI | □ 894 Energy Allocation Act |
| B□ 220 Foreclosure | □ 442 Employment | HABEAS CORPUS: | | □ 865 RSI (405(g)) | □ 895 Freedom of Information Act |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/ Accommodations | B□ 530 General | □ 790 Other Labor Litigation | FEDERAL TAX SUITS | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| □ 240 Torts to Land | □ 444 Welfare | A□ 535 Death Penalty | A□ 791 Empl. Ret. Inc. Security Act | A□ 870 Taxes (U.S. Plaintiff or Defendant) | □ 950 Constitutionality of State Statutes |
| □ 245 Tort Product Liability | □ 440 Other Civil Rights | B□ 540 Mandamus & Other | | A□ 871 IRS – Third Party 26 USC 7609 | □ 890 Other Statutory Actions |
| □ 290 All Other Real Property | | B□ 550 Civil Rights | | | A OR B |
| | | B□ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
15 U.S.C. § 77q(a)(1); 15 U.S.C. §§ 77(q)(a)(2); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78t(a); 15 U.S.C. §78m(a); 17 C.F.R. §§ 240.12b-20 and 240.13a-1; 15 U.S.C. §§ 77(q)(b). Violations of the federal securities laws.

LENGTH OF TRIAL via __ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
□ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Perm. Inj., Disgorgement and Civil Penalties
CHECK YES only if demanded in complaint:
JURY DEMAND: □ YES [X] NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 7/15/04
SIGNATURE OF ATTORNEY OF RECORD
Christopher E. Martin, Sr. Trial Counsel

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____